**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3457-22

ALDINE STOLL,

     Plaintiff-Appellant,

v.

CUMBERLAND COUNTY,

     Defendant-Respondent.

_____

> Argued May 7, 2024 – Decided May 21, 2024
>
> Before Judges Natali and Haas.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0787-21.
>
> Michael D. O'Leary argued the cause for appellant (Jarve Granato Starr, LLC, attorneys; Anthony Granato and Michael D. O'Leary, on the briefs).
>
> Greg DiLorenzo argued the cause for respondent (Barker, Gelfand, James & Sarvas, attorneys; A. Michael Barker and Greg DiLorenzo, on the brief).

PER CURIAM

Plaintiff Aldine Stoll appeals from a June 23, 2023 Law Division order granting summary judgment to defendant Cumberland County and dismissing her negligence-based complaint based on pursuit immunity as provided in the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to -12-3 (TCA), specifically N.J.S.A. 59:5-2(c). We affirm, albeit for different reasons than those relied upon by the court.

I.

This case arises from a December 2019 incident occurring in the Cumberland County Jail operated by defendant. Plaintiff, an employee of GD Correctional Food Services, worked in the jail kitchen. According to a disciplinary report authored by Corrections Officer Luis Andujar, while he was in the process of serving dinner trays, he opened the door of the cell housing inmate Norris Glass, who suddenly "charged at [him]." Officer Andujar and Glass engaged in a physical altercation, during which Corrections Officer Justin Benton "called a code 99," which refers to a situation in which an officer "needs help."

Upon hearing the code 99 on his radio, Corrections Officer Luis Velez responded by running to the area of the jail where Glass was housed. Several incident reports completed by officers and staff detail the incident. In his report,

Officer Velez stated a number of kitchen workers were standing in the hallway when he responded to the code 99, and he "accidentally ran into [plaintiff] and bumped into her while trying to avoid" those workers standing in the hallway. Corrections Officers E. Luciano and Cheila Velez also reported they witnessed Officer Velez run into plaintiff near the kitchen area while they too were "responding to the code."

As reported by Sergeant Joseph Rigoli, following the code 99, Glass continued to struggle with Officers Andujar and Benton. With assistance from the other officers responding to the code, Glass was ultimately subdued and restrained.

Meanwhile, Corrections Officer J. Howard "observed [plaintiff] in seated position on [the] floor in front of [the] kitchen entrance door . . . wincing in pain." Officer Howard reported plaintiff "stated her back was hurting" and "asked to be placed in [a] chair," which the officer assisted her with until medical staff could respond. According to the report of Kristina Smith, R.N., who evaluated plaintiff shortly after the incident, plaintiff was "sitting upright in a chair outside the kitchen, awake, alert, and oriented" when she arrived. Nurse Smith stated plaintiff "complained of lower back pain after hitting the edge of the kitchen door" and stated "she fell and also hit her head." The report also

3

indicated plaintiff "ha[d] equal hand grasp strength, [was] able to move all upper and lower extremities, [and her] speech [wa]s clear," but she was "in too much pain to stand/walk."

Plaintiff filed a complaint in which she named defendant, along with fictious individuals and entities, but did not name any individual defendant. In her complaint, she alleged defendant was liable based on a theory of respondeat superior and its failure to "provide proper warning to [p]laintiff of employees running through the area . . . adopt and enforce proper and adequate rules, regulations, guidelines, and procedures for maintaining a safe walkway and work area for workers such as [p]laintiff . . . provide the [p]laintiff with a safe place to carry out her job duties," and stop its employees from "run[ning] recklessly through the area where [p]laintiff was working."

Plaintiff claimed she suffered "compression fractures at L3 and L4" in her back, "lumbar radiculopathy, lumbar disc herniation, and other injuries." Defendant denied liability and asserted several affirmative defenses, including discretionary immunity under N.J.S.A. 59:2-3, good faith immunity under N.J.S.A. 59:3-3, and any other applicable "procedural and substantive provisions of the [TCA]."

During discovery, the parties deposed Captain Amy Brag and Officer Luis Velez. Captain Brag explained both corrections officers and civilian employees receive a copy of the code list, and civilian employees attend a four-hour training which includes information on "the codes and what to do in the event of an emergency." She stated civilian employees are "instructed during the training that when a code is called they are to stay out of the way . . . not to interfere, and . . . to remain where they are." She confirmed civilian employees are "not supposed to walk through the hallways" when a code is called.

Additionally, Captain Brag testified civilian employees are "told during training if they . . . see an officer running, to move out of the way." With respect to officer training, she explained officers are not trained to "practice caution while . . . responding to a code 99" but rather to "get there as fast as [they] can to assist the officer." She noted codes are broadcast across the radio, which civilian employees would be able to hear if an officer is present.

At his deposition, Officer Velez testified he was trained that a code 99 is called "when an officer—any body part of the officer falls on the ground or desk or wall, they need help," but a different code would be used if related to a medical condition. Officer Velez stated plaintiff "could have unfroze her mind and stepped back" to avoid the accident, "but she didn't."

5

Defendant subsequently moved for summary judgment, relying upon various TCA immunities. As relevant here, and based on the record before us, it appears defendant argued it was immune from injuries resulting from "a person resisting or evading arrest" or "a law enforcement officer's pursuit of a person" under N.J.S.A. 59:5-2, and for any "acts in good faith in the execution or enforcement of any law" under N.J.S.A. 59:3-3.

The court granted defendant's summary judgment application, entered a conforming order, and explained the rationale for its decision in an oral ruling. It concluded defendant was entitled to immunity pursuant to N.J.S.A. 59:5-2(c), which exempts public entities from liability for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2(c). The court explained the corrections officer who collided with plaintiff was responding to a "code 99," which "means that there's some inmate, or a group of inmates, or something going on, which puts an officer in danger and needs immediate assistance," and the officers "have to get to the scene before this escalates" without worrying about anything else, which it found consistent with the basis for the immunity.

Relying upon Tice v. Cramer, 133 N.J. 347 (1993), the court noted "it is fundamentally unfair to impose liability on police officers who risk their own

lives in those pursuits" and society could not expect or "demand effective law enforcement and then dilute that expectation with the imposition of liability because the bystander may be a victim of unfairness."  It found those principles "appl[y] squarely to this case" as "[t]hese officers who were running in an attempt to assist their fellow officers as a result of a problem with an inmate can't sit there and decide, well, somebody might be coming down or may be exiting this doorway . . . [and] [t]heir prime objective is to get to the dangerous situation and assist the officer who is in trouble."  Although acknowledging pursuit immunity was "not squarely on point," the court concluded the provision should be construed "broadly to . . . make sure that these officers in these situations are protected from liability."  Because it concluded N.J.S.A. 59:5-2(c) applied, the court did not address the other grounds for summary judgment raised by defendant.  This appeal followed.

## II.

Before us, plaintiff reprises her argument that pursuit immunity as provided in N.J.S.A. 59:5-2(c) does not apply to the circumstances here, and thus she contends the court erred in granting defendant summary judgment on that basis.  Relying upon Torres v. City of Perth Amboy, 329 N.J. Super. 404, 409 n.2 (App. Div. 2000), she notes "the legislative intent of N.J.S.A. 59:5-2

was to codify the holding in <u>Fielder v. Stonack</u>, 141 N.J. 101[, 115] (1995)," in which the Supreme Court stated "police officers may pursue without being inhibited by the threat of potential civil liability for injuries if their actions are thereafter deemed to have negligently caused them; they need not give up or moderate the chase because of that threat." Plaintiff argues, based on the motion record, Officer Velez was not "in pursuit of a person" as discussed in <u>Torres</u>, 329 N.J. Super. at 407, when he injured her, as Glass was not "attempting to elude the officer," escaping, or attempting to escape. She maintains Glass was "already in the officer's custody" and "[a]t best it could be said that [Officer Velez] was on his way to provide assistance or aid his fellow officers." In sum, plaintiff asserts N.J.S.A. 59:5-2(c) was not meant to protect "law enforcement officers who are merely providing assistance after an individual has been detained or is in custody," as "the threat to the general public and law enforcement personnel has been alleviated" at that point.

Defendant responds the statute must be construed consistent with the Legislature's intent, and the TCA's aim is to "establish immunity for government action as the rule and liability as the exception." It maintains N.J.S.A. 59:5-2 "should not be narrowly construed to mean that the escaping/resisting/evading person needs to directly cause the injury."

8

Specifically, relying upon Alston v. City of Camden, 168 N.J. 170, 182 (2001), and Tice, 133 N.J. 347, defendant contends the New Jersey Supreme Court has "rejected a technical view of pursuit in favor of a more expansive approach." Alston, 168 N.J. at 182. It argues both Fielder and Tice, which "interpreted [N.J.S.A.] 59:5-2(b)(2) broadly to encompass immunity for injuries caused by a pursuit" prior to the enactment of subsection (c), support a broad interpretation of the immunities provided in the TCA.

Defendant also reprised several alternative arguments it raised before the court in support of its summary judgment application. Specifically, defendant again contends: 1) it is entitled to good faith immunity pursuant to N.J.S.A. 59:3-3; 2) it cannot be liable "for an injury resulting from an act or omission of a public employee where the public employee is not liable" under N.J.S.A. 59:2-2(b); 3) it is entitled to immunity pursuant to N.J.S.A. 59:5-2(b); and 4) plaintiff failed to establish that any corrections officer acted negligently to set forth a basis for vicarious liability because she did not present an expert to establish the appropriate standard of care. Plaintiff argues for the first time in her reply brief defendant is precluded from raising these alternative arguments as it did not file a cross-appeal.

For the reasons that follow, we agree with plaintiff that the court incorrectly interpreted N.J.S.A. 59:5-2(c) as applied to the facts of this case. That immunity does not apply as Officer Velez was not in pursuit of a person. However, as we review judgments and orders, not opinions, we may affirm a "court's decision on grounds different from those relied upon" by the trial court. State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011). We conclude the June 23, 2023 order should be affirmed because based on the undisputed facts in the motion record, it is clear defendant is entitled to good faith immunity provided by N.J.S.A. 59:3-3.

We first address the standard of review guiding our analysis with respect to the order on appeal, followed by the applicable substantive legal principles. "We review decisions granting summary judgment de novo," C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023), applying the same standard as the trial court, Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." C.V., 255 N.J. at 305 (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). "Summary judgment is appropriate if 'there is no genuine issue

as to any material fact' and the moving party is entitled to judgment 'as a matter of law.'" Ibid. (quoting R. 4:46-2(c)).

The TCA provides that public entities may be held liable for negligence only within its limitations. N.J.S.A. 59:1-2. As the court recognized, "under the TCA, 'immunity [of public entities] from tort liability is the general rule and liability is the exception.'" Stewart v. N.J. Tpk. Auth., 249 N.J. 642, 655-56 (2022) (alteration in original) (quoting Coyne v. Dep't. of Transp., 182 N.J. 481, 488 (2005)). Pursuant to N.J.S.A. 59:2-2, a public entity cannot be held liable where the employee is not liable. Accordingly, the TCA provides for various forms of immunity, such as that set forth in N.J.S.A. 59:5-2, which provides "[n]either a public entity nor a public employee is liable for . . . c. any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2.

As our Supreme Cout explained in Alston, pursuit immunity involves "two competing policy interests": on one hand, "unless there is such immunity, police officers will be reluctant to enforce the law vigorously for fear of liability," and on the other, "such pursuits result in a large number of unjustified injuries that can be diminished only by the imposition of liability." 168 N.J. at 181-82 (quoting Tice, 133 N.J. at 351). The Court noted in Fielder:

> [a]n officer pursuing an escaping person faces many difficult decisions: whether to pursue at all; how aggressively to pursue; how to balance the risk of injury inevitably involved in the chase against the risk to society of not pursuing; how to evaluate the apparent minor guilt of fleeing against the potentially greater guilt implicit in flight; and how to assess society's interest in enforcing the law.
>
> [141 N.J. at 114-15.]

Ultimately, the Court determined "that policy question is for the Legislature, which, as we read the law, has answered it in favor of absolute immunity, absent willful misconduct on the part of the police officer." Alston, 168 N.J. at 182 (quoting Tice, 133 N.J. at 351). While recognizing pursuit immunity may be "fundamentally unfair to injured innocent bystanders," the Court found it also "fundamentally unfair to impose liability on police officers who risk their own lives in those pursuits, who by definition face emergency circumstances and extraordinary events in a pursuit, who act in good faith, and who should be encouraged to pursue suspects and to do so effectively." Ibid.

The term "pursuit" is not defined in the TCA. Although pursuit immunity most often arises in the context of vehicular pursuits, it is not limited to those situations. Id. at 179. Indeed, the Court in Alston "rejected a technical view of pursuit in favor of a more expansive approach." Id. at 182.

"[F]or pursuit immunity to apply the negligence implicated by the pursuit must be connected to the pursuit in a significant manner." Id. at 180. But, "[w]hether the negligent conduct involves the initiation, continuation, or conduct of the pursuit makes no difference: it is immune." Ibid. (alteration in original) (quoting Fielder, 141 N.J. at 123). It is similarly irrelevant whether the injuries are caused by the pursuer or the pursued. Id. at 178.

As noted, where the immunity applies, it is "absolute except in the event of willful misconduct on the part of a public employee." Id. at 183 (quoting Tice, 133 N.J. at 367); see also N.J.S.A. 59:3-14(a) (providing "[n]othing in [the TCA] shall exonerate a public employee from liability if it is established that his conduct . . . constituted . . . willful misconduct"). Although willful misconduct "is not immutably defined but takes its meaning from the context and purpose of its use," the Court explained "[p]rior decisions have suggested that willful misconduct is the equivalent of reckless disregard for safety [and] more than an absence of 'good faith.'" Alston, 168 N.J. at 185 (first alteration in original) (quoting Fielder, 141 N.J. at 124). "[I]n the context of a police officer's enforcement of the law, . . . willful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline." Fielder, 141 N.J. at 125.

Our consideration of the issue is guided by fundamental principles of statutory construction. As with any case in which we are asked to interpret a statute, "[w]e strive to 'divine and effectuate the Legislature's intent.'" Ripp v. Cnty. of Hudson, 472 N.J. Super. 600, 609 (App. Div. 2022) (quoting N.J. Transit Corp. v. Sanchez, 242 N.J. 78, 85 (2020)). Because the "statute's plain language 'is the "best indicator" of legislative intent,'" In re Appointment of the Council on Affordable Hous., 477 N.J. Super. 576, 588 (App. Div. 2024) (quoting State v. Courtney, 243 N.J. 77, 85 (2020)), we first look to that language, considering the words' "ordinary meaning and significance," Ripp, 472 N.J. Super. at 609 (quoting Sanchez, 242 N.J. at 86).

"If the plain language leads to a clear and unambiguous result, then our interpretative process is over." Council on Affordable Hous., 477 N.J. Super. at 589 (quoting Courtney, 243 N.J. at 86). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" C.R. v. M.T., ___ N.J. ___, ___ (2024) (slip op. at 14) (quoting Cashin v. Bello, 223 N.J. 328, 335 (2015)). We look to extrinsic evidence of legislative intent such as legislative history only "when the statutory language is ambiguous." Finkelman v. Nat. Football League, 236 N.J. 280, 289 (2019).

When interpreting specific terms, we "'read and construe[]' the words 'with their context' and, 'unless another or different meaning' is specified, give them 'their generally accepted meaning, according to the approved usage of the language.'" State v. Williams, 467 N.J. Super. 1, 4 (App. Div. 2021) (alteration in original) (quoting N.J.S.A. 1:1-1). We also "consider which terms and phrases the Legislature saw fit to define rather than rely on their plain and ordinary meaning." Malzberg v. Josey, 473 N.J. Super. 537, 547 (App. Div. 2022).

Here, it is undisputed defendant is a public entity entitled to the protections of the TCA. See N.J.S.A. 59:1-3 (defining public entity as "any county"). Additionally, nothing in the record, including the multiple officer reports and deposition testimony of Officer Velez and Captain Bragg, indicates Officer Velez engaged in willful misconduct to vitiate any applicable immunity. We disagree, however, with the court's interpretation of the pursuit immunity afforded by N.J.S.A. 59:5-2(c) as Officer Velez was simply not in "pursuit of a person" as used in N.J.S.A. 59:5-2(c), even acknowledging the policies underlying the TCA in favor of broad immunity for public entities, see Stewart, 249 N.J. at 655-56, and the "expansive approach" taken when considering pursuit, Alston, 168 N.J. at 182.

We find no ambiguity in the plain language of N.J.S.A. 59:5-2(c). The immunity requires a law enforcement officer be "in pursuit of a person" for it to apply. To be "in pursuit of a person" necessarily means that person is in some type of flight giving rise to the pursuit. This interpretation is consistent with the ordinary meaning and significance of pursuit. See Black's Law Dictionary 1493 (11th ed. 2019) (defining "pursuit" as "[t]he act of chasing to overtake or apprehend"); Merriam-Webster's Collegiate Dictionary 1011 (11th ed. 2020) (defining "pursue" as "to follow in order to overtake, capture, kill, or defeat" and "pursuit" as "the act of pursuing"); Cambridge Academic Content Dictionary, https://dictionary.cambridge.org/us/dictionary/english/pursuit (1st ed. 2009) (defining "pursuit" as "the act of following or searching for someone or something, in order to catch or attack the person or thing"). It also conforms to case law applying the term.

In Torres, we relied upon the New Jersey Police Vehicular Pursuit Policy for its definition of pursuit in a vehicular context to determine whether an officer was entitled to immunity from injuries caused by an escaping person under N.J.S.A. 59:2-2(b). 329 N.J. Super. at 407. Specifically, we noted a pursuit in that context "is an active attempt by a law enforcement officer . . . to apprehend one or more occupants of another moving vehicle when the officer reasonably

believes that the driver of the fleeing vehicle is aware of the officer's attempt to stop the vehicle and is resisting apprehension . . . ." Id.

Neither defendant nor the court identified any case applying pursuit immunity to a factually similar situation, nor has our independent research discovered any. In fact, each of the cases we located granting an officer pursuit immunity share a characteristic that does not exist in the record before us: the person being pursued was attempting to flee in some way. See, e.g., Alston, 168 N.J. at 174 (police officer pursuing on foot woman who "ran away"); Fielder, 141 N.J. at 106-07 (police officer pursuing in car a motorcyclist who drove away in the middle of a traffic stop); Tice, 133 N.J. at 351-52 (police officer pursuing in car another vehicle which did not stop despite driver being aware of police). In contrast, nothing in the record demonstrates Glass was attempting to escape or flee.

We acknowledge the situation confronting the officers was dangerous and required law enforcement intervention. Certainly, Glass' conduct threatened officer safety, and getting him under control required the assistance of at least three officers. But simply because Officer Velez needed to respond quickly to assist his fellow officer does not equivalate to the conclusion he was in "pursuit of a person" as used in N.J.S.A. 59:5-2(c). Stated differently, Officer Velez was

17

conscientiously responding to a call for help. Nothing in the record indicated he knew the nature of the emergency or the suspect involved, that anyone was escaping or fleeing, or that Officer Velez was "chasing" or attempting to "overtake or apprehend" anyone. Black's Law Dictionary at 1493. Simply put, even taking an "expansive approach" to pursuit, see Alston, 168 N.J. at 182, we conclude assisting and responding to an emergency, as here, is not the same as running to catch someone attempting to flee.

As noted, our review of the court's order is not limited to the bases expressed by the court. See Heisler, 422 N.J. Super. at 416. In this regard, we have reviewed the record against our de novo standard of review, and conclude the order should be affirmed because Officer Velez is entitled to qualified good faith immunity under N.J.S.A. 59:3-3. As he is not liable for plaintiff's injuries, neither can defendant be liable for plaintiff's injuries under the TCA.[1]

Indeed, as noted, pursuant to N.J.S.A. 59:2-2, a public entity cannot be held liable where the employee is not liable. Further, the TCA grants public

_____

[1] We reject plaintiff's position, raised for the first time in reply, that defendant was required to file a cross-appeal to raise alternative arguments supporting the judgment in its favor. See State v. Watson, 254 N.J. 558, 609 (2023) (noting "without having filed a cross-appeal, a respondent can argue any point on the appeal to sustain the trial court's judgment" (quoting Chimes v. Oritani Motor Hotel, Inc., 195 N.J. 435, 443 (App. Div. 1984))).

employees qualified immunity for certain tort claims, declaring that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. This immunity applies "only if [the employee] engaged in some act or acts to enforce a law." Maison v. N.J. Transit Corp., 245 N.J. 270, 305 (2021). Good faith immunity is "appropriate if public employees can establish that their acts were objectively reasonable or that they performed them with subjective good faith." Canico v. Hurtado, 144 N.J. 361, 365 (1996).

Generally, whether a defendant acted in good faith is a question of fact to be resolved by a jury or at a plenary hearing, see Fielder, 141 N.J. at 132, but may be resolved at the summary judgment stage if the defendant adequately establishes their entitlement to the immunity. Canico, 144 N.J. at 365 (citing Hayes v. Mercer Cnty., 217 N.J. Super. 614, 622 (App. Div. 1987)). "'To prevail on a motion for summary judgment, a public employee need not establish his subjective, . . . actual, good faith if his conduct was objectively reasonable.'" Brayshaw v. Gelber, 232 N.J. Super. 99, 110 (App. Div. 1989) (quoting Hayes, 217 N.J. Super. at 622). In other words, the employee "need prove only one component" as "[i]mmunity attaches if the employee can show either objective or subjective good faith." Alston, 168 N.J. at 186.

19

When considering whether a defendant acted in good faith, we have applied the Supreme Court's standard in Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Alston, 168 N.J. at 186. Specifically, as the Court explained: "[t]he objective element involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights,' . . . [while] [t]he subjective component refers to 'permissible intentions.'" Id. at 187 (quoting Harlow, 457 U.S. at 815). The Court noted a "public employee, although negligent, may still act in good faith," and accordingly a plaintiff must prove "more than ordinary negligence" to overcome the immunity. Canico, 144 N.J. at 365.

In discharging his duties, Officer Velez was responding to a serious incident at the jail. He was clearly acting as a law enforcement officer when responding to the code 99 call. See State v. Bey, 258 N.J. Super. 451, 467 (App. Div. 1992) (collecting cases and holding corrections officers are appropriately considered law enforcement officers). By running to respond to the code 99, Officer Velez was acting to enforce laws upholding the safety and security of the jail. See N.J.A.C. 10A:31-7.1 (providing, in the event of an emergency situation in the jail, "[a]ll measures shall be taken to maintain effective security and restore normal conditions as expeditiously as possible"). Nothing in the record even remotely suggested he engaged in willful misconduct or engaged in

conduct that could be characterize as a reckless disregard for anyone's safety. Rather, the record supports the conclusion his conduct in responding to the code 99 was both subjectively in good faith and objectively reasonable.

Having concluded Officer Velez would be entitled to good faith immunity pursuant to N.J.S.A. 59:3-3 and thus not liable for plaintiff's injuries, defendant cannot be liable under N.J.S.A. 59:2-2, as noted. Accordingly, we need not, and do not, address the remaining immunities and grounds for affirmance advanced by defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21