748 A.2d 125 (2000)
329 N.J. Super. 404
Martin TORRES, Plaintiff-Appellant,
v.
CITY OF PERTH AMBOY, Perth Amboy Police Department and Andy Montalvo, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 2000.
Decided April 3, 2000.
Michael F. O'Gara, Princeton, for plaintiff-appellant (Doris C. Lamourt, Perth Amboy, attorney; Mr. O'Gara, on the brief).
Frederick L. Rubenstein, for defendants-respondents (Nolan & Hynes, Perth Amboy, attorneys; Mr. Rubenstein, on the brief).
Before Judges D'ANNUNZIO, NEWMAN and FALL.
*126 The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This is an automobile personal injury negligence action against a police officer and his employer, the City of Perth Amboy. Plaintiff appeals from a summary judgment entered in favor of all defendants based on the "pursuit" immunity contained in N.J.S.A. 59:5-2b(2). We now reverse.
Officer Montalvo was on routine patrol operating a marked police vehicle on January 29, 1996. He was proceeding southbound on Convery Boulevard in Perth Amboy when he observed a van traveling northbound. Montalvo's radar device reported a 57 mile-per-hour speed for the van, 22 miles-per-hour above the posted speed limit. Montalvo made a U-turn and proceeded north on Convery Boulevard to stop the van. Montalvo reported that he had activated his vehicle's overhead lights.
Montalvo stated that as he approached the intersection of Convery Boulevard and Smith Street, he noticed plaintiff, a pedestrian, running across Convery from west to east against a red light. Plaintiff was looking north. Montalvo reported that he activated his siren to attract plaintiff's attention, but could take no evasive action due to southbound traffic and obstructions on his right. Montalvo's vehicle struck plaintiff, who sustained a comminuted fracture of his right leg and two fractures of his cervical vertebrae.
Plaintiff contends that he crossed Convery with a green light in his favor and that the overhead lights on Montalvo's vehicle were not on. He also stated that he heard no siren.
On the date of plaintiff's injury, N.J.S.A. 59:5-2b(2) (section 2b(2)) provided:
Neither a public entity nor a public employee is liable for: ... any injury caused by ... an escaping or escaped person[.]
In Fielder v. Stonack, 141 N.J. 101, 661 A.2d 231 (1995), and Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090 (1993), the New Jersey Supreme Court expansively applied section 2b(2) to provide absolute immunity for injuries sustained by third persons due to vehicular pursuits, whether the injuries were caused by the pursued, as in Tice, or the pursuer, as in Fielder. The only exception to this immunity is for "willful misconduct." N.J.S.A. 59:3-14a; Tice, supra, 133 N.J. at 367, 627 A.2d 1090.
The core issue in the present case is whether Montalvo was engaged in a "pursuit" to which the immunity attaches. Tice and Fielder involved police chases of persons who had been ordered to stop, but elected to flee. The rationale of the immunity in those circumstances is to permit the police to perform their duties uninhibited by concerns regarding civil actions in the event of injury. Tice, supra, 133 N.J. at 351, 363, 627 A.2d 1090; Fielder, supra, 141 N.J. at 113, 115, 661 A.2d 231. One impact of this immunity is to shift the burden of underwriting the cost of police pursuits to injured third parties.
The New Jersey Police Vehicular Pursuit Policy (Pursuit Policy), revised in January 1993, see Fielder, supra, 141 N.J. at 125, n. 5, 661 A.2d 231, informs our consideration of the issue. It defines a pursuit:
Pursuit driving is an active attempt by a law enforcement officer operating a motor vehicle and utilizing emergency warning lights and an audible device to apprehend one or more occupants of another moving vehicle when the officer reasonably believes that the driver of the fleeing vehicle is aware of the officer's attempt to stop the vehicle and is resisting apprehension by increasing vehicle speed, ignoring the officer or otherwise attempting to elude the officer.
The critical element in this definition is the officer's reasonable belief that the pursued driver is aware of a police attempt to stop the vehicle and the pursued driver "is resisting apprehension by increasing vehicle *127 speed, ignoring the officer or otherwise attempting to elude the officer."
We are persuaded that section 2b(2) immunity applies to a pursuit as defined in the Pursuit Policy[1], but not to Officer Montalvo's attempt to close the gap on the speeding van. In Tice, supra, the Court, in construing the phrase "escaping person" in section 2b(2), stated that the phrase "fairly describes someone who is fleeing from a police pursuit by vehicle." 133 N.J. at 363, 627 A.2d 1090. Additionally, the Court in Tice defined the issue before it as "whether police officers in pursuit of a vehicle that has failed to heed their command to stop are immune from liability for injuries resulting from the pursuit." Id. at 350, 627 A.2d 1090; see also Fielder, supra, 141 N.J. at 114-15, 661 A.2d 231.
A pursuit creates an enhanced risk of mishap and injury. In a pursuit the likelihood of excessive speed and disregard of traffic controls is great. A pursuit involves at least two vehicles and often involves more than two. In contrast, a police officer's attempt to close the gap on a speeding vehicle that is not attempting to flee does not involve the risk synergies of a pursuit.
We recognize that application of the immunity to the high risk occurrence, the pursuit of a fleeing driver, but not to lower-risk police action, creates an apparent anomaly. We are persuaded, however, that the anomaly is more apparent than real, because the immunity's rationale is to promote police participation in the high-risk action without the inhibiting concern of civil reprisal. Fielder, supra, 141 N.J. at 115, 661 A.2d 231. Such a rationale is less important in the context of lower-risk events, such as Montalvo's attempt to close the gap and stop a non-fleeing speeder.
Other elements of the Pursuit Policy support our conclusion that section 2b(2) immunity does not apply to Montalvo's action in this case. The Pursuit Policy instructs that "while it is the officer who initiates the stop, it is the violator who initiates the pursuit." Section I. The Pursuit Policy explicitly recognizes the distinction between closing the distance and a pursuit. It states:
To diminish the likelihood of a pursuit, a police officer intending to stop a vehicle for any violation of the law shall, when possible and without creating a threat to public safety, close the distance between the two vehicles prior to activating emergency lights and an audible device.

[Section III. E. (emphasis added).]
Additional recognition of this distinction is found in section I.A.2. of the Pursuit Policy. It provides that "[p]ursuit for motor vehicle offenses is not authorized ... unless the violator's vehicle is being operated so as to pose an immediate threat to the safety of another person." This subsection does not prohibit an attempt to stop, i.e., close the distance on a motor vehicle violator, but it does limit the circumstances under which a "pursuit" is permitted.
In Canico v. Hurtado, 144 N.J. 361, 676 A.2d 1083 (1996), our Supreme Court again recognized the distinction between a pursuit of a fleeing person and other types of aggressive police response. There, Officer Hurtado was operating a police vehicle with "siren blaring and emergency lights flashing" on Broad Street in Newark. Id. at 363, 676 A.2d 1083. Hurtado was responding to an alarm at a bank. His vehicle collided with Canico's vehicle.
The Court ruled that Hurtado could not rely on section 2b(2) immunity because "Hurtado was not pursuing escaping persons." Id. at 364, 676 A.2d 1083. The Court held, however, that the immunity afforded in N.J.S.A. 59:3-3 (section 3-3) applied. That section provides in relevant part:
A public employee is not liable if he acts in good faith in the execution or enforcement of any law.
In concluding that section 3-3 applied, the Court reasoned:

*128 Although we recognize that people ordinarily do not use the term "good faith" to describe the operation of motor vehicles, we believe that the Legislature intended that the term could encompass the operation of police vehicles. A public employee, although negligent, may still act in good faith. Marley v. Palmyra Bor., 193 N.J.Super. 271, 295, 473 A.2d 554 (Law Div.1983). To pierce section 3-3's qualified immunity, a plaintiff must prove more than ordinary negligence. See id. at 294, 473 A.2d 554 (stating that recklessness usually denies good faith).

[Id. at 365, 676 A.2d 1083.]
The record before us does not establish that Montalvo was engaged in a pursuit of a fleeing person and, therefore, summary judgment should not have been granted on the basis of section 2b(2) immunity.[2] We reverse and remand for further proceedings, including consideration of the applicability of immunity under section 3-3.
Reversed and remanded.
NOTES
[1] Our use of the word pursuit incorporates this definition.
[2] In 1997 the Legislature amended N.J.S.A. 59:5-2 by adding a subsection c. It provides immunity to a public entity and employee for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." L. 1997, c. 423, § 2. This amendment became effective January 19, 1998, two years after Torres' injury. The legislative history indicates that the amendment was intended to "statutorily codify the New Jersey Supreme Court's 1995 determination in Fielder v. Stonack." Assembly Law and Public Safety Committee, Statement to Assembly, No. 1888 (1996).