753 A.2d 171 (2000)
332 N.J. Super. 240
Robert ALSTON, Plaintiff-Appellant,
v.
CITY OF CAMDEN, Camden Police Department, and Officer Ron Conley, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 31, 2000.
Decided June 27, 2000.
*172 Gross and Gross, Cherry Hill, for plaintiff-appellant (Howard A. Gross, on the brief).
John A. Misci, Jr., City Attorney, for defendants-respondents (Stephen J. Buividas, Assistant City Attorney, on the brief).
Before Judges D'ANNUNZIO and FALL.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This appeal involves the application of pursuit immunity afforded the police and their public-entity employers, pursuant to N.J.S.A. 59:5-2b(2), a section of the New Jersey Tort Claims Act. Plaintiff was shot in the hip when Officer Ron Conley's service weapon discharged during Conley's *173 pursuit, on foot, of a female drug suspect. The case was tried to a jury. At trial, the court determined that the immunity statute applied and that defendants could be liable only if they had engaged in "willful misconduct." N.J.S.A. 59:3-14(a). The jury returned a verdict in favor of defendants. Plaintiff appeals.
The incident occurred in Camden at approximately 2:00 p.m. on July 3, 1993. Plaintiff testified that he was walking with a friend when he noticed a young girl run by him. About "two seconds later" plaintiff saw defendant Conley run by, chasing the girl. According to plaintiff, while Conley was running, Conley grabbed his pistol with his right hand. Plaintiff heard the gun discharge and realized he had been shot when he felt pain in his hip. After realizing he had been shot, plaintiff saw the gun on the ground. Plaintiff, however, did not see the pistol fall to the ground because he was watching the fleeing girl.
Conley testified that he was a shift detective at the time of the incident and was not in uniform. Conley was investigating a drug transaction and observed a female engage in what Conley perceived to be a drug sale. Conley began to walk towards the suspect, who began to run. Conley pursued her. As he was running, Conley felt his gun slipping out of his holster. He reached for it to keep it from falling, but it had already fallen to the ground and discharged.
Conley explained that his gun was holstered on his belt on his right side and that the holster had a snap to hold the weapon in place. The weapon had a manual safety device which had to be in the "off" position for the weapon to be fired. At the time of the incident the gun was loaded and a bullet was in the firing chamber. After the gun discharged, Conley picked it up and noticed that the safety was in the off position. He explained that this was unusual because he always carried the gun with the safety lock in the on position, even when pursuing a suspect. He stated that the safety lock was in the off position during this incident because he had drawn his gun earlier in the day during a different incident and he inadvertently left the safety off. Conley conceded that it is not the police department's policy to have officers carry their guns with the safety lock in the off position. He testified that he had no intention of shooting the suspect or even firing a warning shot.
On the date of plaintiff's injury, N.J.S.A. 59:5-2b(2) (section 2b(2)) provided:
Neither a public entity nor a public employee is liable for: ... any injury caused by ... an escaping or escaped person[.]
In Fielder v. Stonack, 141 N.J. 101, 661 A.2d 231 (1995), and Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090 (1993), the New Jersey Supreme Court construed section 2b(2) to provide absolute immunity for injuries sustained by third persons due to vehicular pursuits, whether the injuries were caused by the pursued, as in Tice, or by the pursuer, as in Fielder. The only exception to this immunity is for "willful misconduct." N.J.S.A. 59:3-14a; Tice, supra, 133 N.J. at 367, 627 A.2d 1090.
In Canico v. Hurtado, 144 N.J. 361, 676 A.2d 1083 (1996), our Supreme Court recognized the distinction between pursuit of a fleeing person and other types of aggressive police action. There, Officer Hurtado was operating a police vehicle and was responding to an alarm at a bank. His vehicle collided with Canico's vehicle. The Court determined that section 2b(2) immunity was not applicable because "Hurtado was not pursuing escaping persons." Id. at 364, 676 A.2d 1083. The Court held, however, that the immunity afforded in N.J.S.A. 59:3-3 (section 3-3) applied. That section provides in relevant part:
A public employee is not liable if he acts in good faith in the execution or enforcement of any law.
In concluding that section 3-3 applied, the Court reasoned:
Although we recognize that people ordinarily do not use the term "good faith" *174 to describe the operation of motor vehicles, we believe that the Legislature intended that the term could encompass the operation of police vehicles. A public employee, although negligent, may still act in good faith. Marley v. Palmyra Bor., 193 N.J.Super. 271, 295, 473 A.2d 554 (Law Div.1983). To pierce section 3-3's qualified immunity, a plaintiff must prove more than ordinary negligence. See id. at 294, 473 A.2d 554 (stating that recklessness usually denies good faith).
[Canico, supra, 144 N.J. at 365, 676 A.2d 1083.]
Recently, in Torres v. City of Perth Amboy, 329 N.J.Super. 404, 748 A.2d 125 (App.Div.2000), we held that section 2b(2) immunity did not apply to an officer's attempt to close the gap between the officer's vehicle and a speeding van, because the police action had not yet ripened into a "pursuit."
Although it is not applicable to Alston's injury, which occurred in 1993, the Legislature amended N.J.S.A. 59:5-2 by adding subsection c, effective January 19, 1998. It provides immunity to a public entity and employee for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." L. 1977, c. 423 § 2. The legislative history indicates that the amendment was intended to "statutorily codify the New Jersey Supreme Court's 1995 determination in Fielder v. Stonack." Assembly Law and Public Safety Committee, Statement to Assembly, No. 1888 (1996).
Plaintiff argues that section 2b(2) immunity should be construed to apply only to motor vehicle pursuits as in Tice and Fielder. This contention is without merit. We have applied it in other contexts. See, e.g., Blunt v. Klapproth, 309 N.J.Super. 493, 707 A.2d 1021 (App.Div.) (holding that police and public entity enjoyed pursuit immunity in claim by crisis intervention specialist who was shot by suspect), certif. denied, 156 N.J. 387, 718 A.2d 1216 (1998).
The narrower issue is whether the immunity applies to the use and handling of firearms by police. The immunity applied in Tice and Fielder is statutory. At bottom, therefore, the issue is one of legislative intent. "Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness and legislative history." Coletti v. Union County Bd. of Chosen Freeholders, 217 N.J.Super. 31, 35, 524 A.2d 1270 (App.Div.1987) (citing Shapiro v. Essex County Bd. of Chosen Freeholders, 177 N.J.Super. 87, 424 A.2d 1203 (Law Div.1980), aff'd, 183 N.J.Super. 24, 443 A.2d 219 (App.Div.1982), aff'd, 91 N.J. 430, 453 A.2d 158 (1982)).
"[W]e must first look at the evident wording of the statute to ascertain its plain meaning and intent." Renz v. Penn Central Corp., 87 N.J. 437, 440, 435 A.2d 540 (1981). Our duty is to apply the legislative intent as expressed in the statute's language, and we are not to presume that the Legislature intended something other than what it expressed by its plain language. In re Jamesburg High Sch. Closing, 83 N.J. 540, 548, 416 A.2d 896 (1980); In re the Application of Township of Howell, 254 N.J.Super. 411, 419, 603 A.2d 959 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991).
However, we also are cognizant of the principle that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good discretion.'" Schierstead v. City of Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (citations omitted). Additionally, "where a literal reading of the statute leads to absurd consequences, `the court must restrain the words' and seek the true legislative intent." Id. at 231, 148 A.2d 591 (citing In re Merrill, 88 N.J. Eq. 261, 102 A. 400 (Prerog.Ct.1917)). Moreover, in construing a statute, "[w]e should assume the Legislature intended a reasonable *175 approach, and we should construe the statute to provide one if we can." Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969).
We apply these principles against the backdrop of an uncontrovertible fact: the immunity is fundamentally unfair to injured innocent bystanders, whether the injury results from a motor vehicle accident or a gunshot. See Torres, supra, 329 N.J.Super. at 407, 748 A.2d 125 (observing that the immunity shifts "the burden of underwriting the cost of police pursuits to injured third parties."). We recognize that the impact on innocent bystanders is the result of a policy decision the Legislature was empowered to make. Tice, supra, 133 N.J. at 365, 627 A.2d 1090. Nevertheless, its fundamental unfairness and the burden it imposes on bystanders informs our analysis of legislative intent.
In Tice, supra, and Fielder, supra, the Court explained the rationale behind the Legislature's policy choice. It was to permit the police to perform their duties vigorously and aggressively and without concerns regarding civil reprisal. Tice explained that one of the "clear purposes" of the pursuit immunity "is to encourage vigorous law enforcement. In particular, it is intended to encourage police officers to pursue suspects, to do so effectively, and to accomplish that by relieving them of any concerns that their actions in enforcing the law in this respect will result in liability either to them or to government." 133 N.J. at 363, 627 A.2d 1090; accord Fielder, supra, 141 N.J. at 112-13, 661 A.2d 231. Thus, the Legislature's policy choice is designed to eliminate civil liability as a restraint on police performance.
However, applying such a policy to the use and handling of firearms is counter-intuitive and offends common sense and rationality. Firearms are deadly weapons whose use and handling by the police should be restrained and circumscribed. Inhibiting their use should be the operable norm.
The New Jersey Supreme Court addressed police-inflicted gunshot wounds prior to enactment of the Tort Claims Act. McAndrew v. Mularchuk, 33 N.J. 172, 162 A.2d 820 (1960), involved a wounding by gunshot of a 17-year old by a reserve police officer of the Borough of Keansburg. The officer claimed that he had fired a warning shot into the ground to deter an anticipated attack by the teenager. At the time, New Jersey municipalities enjoyed qualified sovereign immunity under the common law. Municipalities were liable only "for injurious acts performed by a municipality in its governmental capacity when they constitute active wrongdoing." Id. at 181, 162 A.2d 820. A municipality was not liable for a failure to act. Ibid.
The issue in McAndrew, therefore, was whether a high echelon municipal official had engaged in active wrongdoing. In addressing this issue, the Court recognized that "[l]oaded revolvers are dangerous instruments. Their potentiality for infliction of serious injury is such that the law has imposed a duty to employ `extraordinary' care in their handling and use." Id. at 183, 162 A.2d 820 (citations omitted). The Court held that arming a police officer and assigning him to duty without proper training in the use of firearms constituted active wrongdoing by the municipality. Id. at 184, 162 A.2d 820.
Davis v. Hellwig, 21 N.J. 412, 122 A.2d 497 (1956), was a negligence action against a police officer who had fired upon a fleeing shoplifter. The bullet missed the suspect but struck an innocent bystander. The Supreme Court affirmed an Appellate Division decision granting plaintiff a new trial despite an adverse jury verdict. The Court stated:
The Appellate Division's opinion rightly states that "Courts have universally regarded loaded firearms as dangerous instruments and have ascribed an elevated degree of reasonable care and caution to be exercised in their use." [Davis v. Hellwig,] 37 N.J.Super. [at] 573[, 118 A.2d 83 (1955)]. In his notable *176 opinion in Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253 (Ct.App.1928), Mr. Justice Cardozo said that "Some acts, such as shooting are so imminently dangerous to any one who may come within reach of the missile however unexpectedly, as to impose a duty of prevision not far from that of an insurer." Our own decisions are to the same effect. In Moebus v. Becker, 46 N.J.L. 41, 44 (Sup.Ct.1884), for example, it was set down that, "As fire-arms are more than ordinarily dangerous when loaded, those who handle them are bound to use more than ordinary care to prevent injury to others."

[Id. at 415-16, 122 A.2d 497.]
See also Wimberly v. City of Paterson, 75 N.J.Super. 584, 598, 183 A.2d 691 (App.Div.1962) (holding that police officer who fired a warning shot at fleeing suspect will be liable for injury sustained by the suspect if the officer had been negligent), certif. denied, 38 N.J. 340, 184 A.2d 652 (1962).
Additionally, the United States Supreme Court has determined that the killing by police of an unarmed fleeing burglar violated the United States Constitution. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).
New Jersey statutes limit the intentional use of deadly force by law enforcement officers to carefully defined circumstances. See N.J.S.A. 2C:3-7. Violation of those limits presumably would result in criminal prosecution. Firearms are closely regulated; N.J.S.A. 2C:39-1 to 16; N.J.S.A. 2C:58-1 to 18; so are automobiles. However, violations of firearm regulations are crimes, unlike motor vehicle offenses. See, e.g., N.J.S.A. 2C:39-5b (possession of handgun without a permit is a third-degree crime); N.J.S.A. 2C:39-5c (possession of rifle or shotgun without a firearms purchaser identification card is a crime of the third degree). Our statutes require health professionals to report bullet wounds to law enforcement authorities. N.J.S.A. 2C:58-8a. N.J.S.A. 39:4-132 requires automobile repairpersons to report bullet damage to police.
In light of the fundamental unfairness of the immunity as applied to innocent third parties, the special hazard inherent in firearms and the need to restrain their use by police personnel, and in the absence of statutory language expressly immunizing the use and handling of firearms, we conclude that the Legislature did not intend to immunize public employees or public entities under section 2b(2) or N.J.S.A. 59:3-3, the good faith immunity, from injuries to innocent bystanders caused by a law enforcement officer's intentional or negligent discharge of a firearm. Consequently, Officer Conley's liability is to be determined "to the same extent as a private person," N.J.S.A. 59:-31a, and he is entitled to the benefit of "any immunity ... provided by law and ... any defenses that would be available to the public employee if he were a private person." N.J.S.A. 59:3-1b. See also N.J.S.A. 59:2-2a (establishing public entity liability based on public employee liability under principles of respondeat superior).
The judgment is reversed and the case is remanded for a new trial.