Filed 9/17/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARK C. MORENO, | B241998 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC452431) |
| v. | |
| ROWELL SAN-LUIS QUEMUEL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Debre Katz Weintraub, Judge. Affirmed.

Schonbrun DeSimone Seplow Harris Hoffman & Harrison, Vincent James DeSimone, Michael D. Seplow and Erin M. Pulaski for Plaintiff and Appellant.

Collins Collins Muir + Stewart, Melinda W. Ebehar and Catherine M. Mathers for Defendant and Respondent.

_____

We hold that when a peace officer opens his or her door as a precursor to exiting a patrol car and making contact with a motorist during a traffic stop, the peace officer is in "immediate pursuit of an actual or suspected violator of the law" for purposes of the immunity set forth in Vehicle Code section 17004.[1]  In that situation, the peace officer cannot be held liable for opening his or her door in the path of a motorcyclist and causing injury.  Accordingly, we conclude that the trial court properly applied section 17004 when it granted summary judgment in favor of respondent and defendant Rowell San-Luis Quemuel (Quemuel), a Los Angeles County deputy sheriff, against plaintiff and appellant Mark C. Moreno (Moreno).

The judgment is affirmed.

## FACTS

Quemuel is a Los Angeles County deputy sheriff.  On March 26, 2010, he was driving a marked patrol car and saw a motorist fail to obey a one-way street sign.  Quemuel activated his red and blue overhead lights and pursued.  Moreno, who was riding a motorcycle, saw the overhead lights from two or three blocks away.  The motorist pulled over to the curb on Sunset Boulevard.  As part of the traffic stop, Quemuel opened his driver side door so he could exit the patrol car and make contact with the motorist.  Moreno collided into the car door.

Alleging that Quemuel opened his door in violation of section 22517,[2] Moreno sued Quemuel for negligence and negligence per se.

---

[1]      All further statutory references are to the Vehicle Code unless otherwise indicated.  The full text of section 17004 provides:  "A public employee is not liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm or other emergency call."

[2]      Section 22517 provides:  "No person shall open the door of a vehicle on the side available to moving traffic unless it is reasonably safe to do so and can be done without interfering with the movement of such traffic, nor shall any person leave a door open on

2

Quemuel moved for summary judgment based on the theory that he was immune from liability based on, inter alia, section 17004. The trial court granted the motion. This appeal followed.

## STANDARD OF REVIEW

An order granting summary judgment is subject to de novo review. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) So too is statutory interpretation. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) When interpreting a statute, "our primary goal is to determine and give effect to the underlying purpose of the law. [Citation.]" (*Ibid.*) If the meaning of a statute is unmistakable, that meaning must be accepted. But if a statute is unclear or ambiguous, we may interpret its language in light of the statutory scheme, objects to be achieved, evils to be remedied, legislative history, public policy, and contemporaneous administrative construction. (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803.) In addition, we may consider the consequences that will flow from a particular interpretation. (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2012) 203 Cal.App.4th 1328, 1338.)

## DISCUSSION

Section 17004 provides immunity for a public employee who causes injury while operating an authorized emergency vehicle "when in the immediate pursuit of an actual or suspected violator of the law[.]" We give the word "immediate" its commonsense interpretation, meaning something that is accomplished without delay. The tougher question is the meaning of "pursuit."

*The meaning of "pursuit"*

Moreno suggests that case law has already decided that pursuit means a chase, or at least a situation involving the purposeful movement of two vehicles. He cites *Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, 885, *City of Sacramento v.*

---

the side of a vehicle available to moving traffic for a period of time longer than necessary to load or unload passengers."

3

*Superior Court* (1982) 131 Cal.App.3d 395, *Bratt v. City and County of San Francisco* (1975) 50 Cal.App.3d 550, *Colvin v. City of Gardena* (1992) 11 Cal.App.4th 1270, and *Lossman v. City of Stockton* (1935) 6 Cal.App.2d 324. But none of these cases expressly decide the scope of the word pursuit, nor did any of them consider whether an officer can be in pursuit while opening the door of a stationary vehicle. A case is authority only for an issue actually considered and decided. (*In re Chavez* (2003) 30 Cal.4th 643, 656.)

Broadly defined, "pursuit" is a present effort to secure or attain something. Narrowly defined, it is the act of pursuing, and chase, hunt and search are synonyms.[3] In the context of a routine traffic stop, a peace officer wants to attain contact with the motorist for the purpose of investigating, issuing a citation or, if appropriate, apprehending the suspect. That goal cannot be achieved unless a peace officer opens his or her vehicle door and gets out. Accordingly, getting out of a vehicle is part of the officer's pursuit in the broad sense. But in the narrow sense, the hunt, chase and search are over once the motorist pulls over and signals a preliminary intent to submit to police authority. Due to these varied definitions, section 17004 is susceptible to more than one meaning and we must resort to extrinsic aids to construe it. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)[4]

---

[3]  See Dictionary.com at <http://www.dictionary.reference.com/pursuit> as of September 17, 2013. Among other things, pursuit means "an effort to secure or attain" and "the act of pursuing." Synonyms include chase, hunt and search.

[4]  In part, Moreno suggests that we should defer to the conclusion in a supervisor's incident report issued by Quemuel's department indicating that he was not in "pursuit" at the time of the accident. But there is no evidence that Quemuel's department was interpreting the meaning of "pursuit" in section 17004. Even if it was, Moreno does not explain why the supervisor's incident report is analytically relevant and we therefore decline to use the supervisor's incident report as one of our extrinsic aids. In doing so, we note that courts give deference to an agency's interpretation of a statute under which it operates. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 225 [strong deference is given to the Fair Employment and Housing Commission's interpretation of the Fair Employment and Housing Act; *Chevron, U.S.A. v. Natural Res. Def. Council* (1984) 467 U.S. 837, 844.) Quemuel's department does not operate under, enforce or otherwise administer section 17004.

4

*The statutory scheme*

Section 17004 appears in an article pertaining to public agencies and employees within a chapter pertaining to the civil liability of owners and operators of vehicles.[5] (§ 17000 et seq.) Under this statutory scheme, a public entity can be held liable for damage or injury caused by "a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of [his or her] employment." (§ 17001.) This is true even if the public employee is immune under section 17004. (*Cruz v. Briseno* (2000) 22 Cal.4th 568, 572–574 (*Cruz*).) A public entity has immunity only as provided in section 17004.7.

Notably, the immunity provided in section 17004 applies to damage or injury "resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call." (§ 17004.) This language is broad enough that it would prevent suit against a public employee for damage or injury caused by the negligent operation of a fire engine while it is being driven to a fire or used in a stationary position to fight a fire. Thus, operation of a vehicle in section 17004 encompasses more than simply driving that vehicle. And with respect to an immediate pursuit situation, the application of section 17004 is not limited to emergencies. (*Cruz*, *supra*, 22 Cal.4th at p. 572 ["section 17004 does not by its terms require the immediate pursuit to involve an actual 'emergency' situation, as opposed to a mere 'routine traffic stop' to issue a citation"].) Because section 17004 applies to a routine traffic stop, and because a routine traffic stop does not involve a car chase, it cannot be said that a car chase is synonymous with "pursuit" in section 17004.

If a public agency adopts a "vehicle pursuit policy" that satisfies the statutory requirements, then section 17004.7 provides a public agency with immunity in connection with damage or injury "resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes

---

[5] The statutory scheme also applies to the civil liability of a private fire department that has entered into a mutual aid agreement. (§ 17004.5.)

he or she is being or has been, pursued in a motor vehicle by a peace officer employed by the public entity." (§ 17004.7, subd. (b)(1).) Section 17004.7 refers to "vehicular pursuits" and "motor vehicle pursuits." Undeniably, the Legislature clearly knew how to limit the concept of pursuit to car chases. When it referred to "immediate pursuit" during the operation of an emergency vehicle in section 17004, the Legislature made a choice to use language that is broader than the language in section 17004.7.

In sum, the statutory scheme lends itself to interpreting "pursuit" in the broad sense of the phrase.[6]

*Public policy; consequences of different interpretations*

On one hand, limiting "pursuit" to vehicular pursuit would potentially protect motorcyclists because officers would have incentive to be careful when they open their car doors. On the other hand, a motorist who has been stopped for a traffic violation might reverse into the police vehicle or have weapons. There might be dangerous conditions in the area.[7] Because of these risks, it is important for an officer to freely use discretion when deciding where to place his or her attention during a traffic stop. For several reasons, we believe the better public policy is to allow the officer to focus on personal safety and the pulled over motorist. If we do not allow an officer discretion over such important job-related matters, an officer may compromise his or her safety or

---

[6]     Section 21055 exempts the driver of an emergency vehicle from various traffic laws. But the exemption "does not relieve the driver of a vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor protect him from the consequences of an arbitrary exercise of the privileges granted in that section." (§ 21056.) If a driver disregards traffic laws when there is no necessity, his use of the privilege is arbitrary. (*Reed v. City of San Diego* (1947) 77 Cal.App.2d 860, 867 [construing the former section 454].) Contrary to what Moreno suggests, sections 21055 and 21056 shed no light on the meaning of "immediate pursuit."

[7]     Moreno contends that because Quemuel had pulled the suspected violator over to the side of the road, "the illegal activity had ceased and the circumstances did not present any sort of enhanced risk to . . . Quemuel or the public." We reject the assumption that there was no enhanced risk. Any traffic stop is risky because the driver and circumstances are unknown.

6

hesitate to enforce the law. And if the officer was negligent, the injured party still has a remedy against the public entity under section 17001.

 *Out-of-state cases*

 Moreno suggests we should follow the lead of our sister courts in *Schreyer v. Chaplain* (Md.Ct.App. 2010) 416 Md. 94 [5 A.3d 1054] (*Schreyer*), *Torres v. City of Perth Amboy* (N.J. 2000) 748 A.2d 125 (*Torres*) and *Fogg v. Macaluso* (Colo. 1995) 892 P.2d 271 (*Fogg*). As we explain, they do not alter our analysis.

 The *Schreyer* court interpreted section 19-103(b) of the Maryland Transportation Code, which provides immunity to "[a]n operator of an emergency vehicle . . . in the performance of emergency service" and defines emergency service to mean, inter alia, "[p]ursuing a violator or a suspected violator of the law." (*Schreyer*, *supra*, 5 A.3d at p. 1057, fn. 3.) The majority held that pursuit does not occur unless a moving vehicle is chasing another moving vehicle. As a result, it held that a police officer was not entitled to immunity for causing a collision after he saw drug deals in an alley and decided to approach the alley by driving the wrong way down a one-way street. In part, the majority concluded that there was no pursuit because the drug dealer was not fleeing and the situation was not an emergency. (*Schreyer*, at p. 1068.) *Schreyer* is distinguishable because the Maryland statute requires an emergency and, per *Cruz*, section 17004 does not. Also, *Schreyer* did not have to weigh the policy implications of giving an officer immunity for the act of opening the door of a police vehicle during a traffic stop and causing injury. Beyond that, we conclude that California policy and legislative intent hew more closely to the reasoning of the *Schreyer* dissent, which stated that "the proper application of the rules of statutory construction . . . dictates a broader, more commonsense construction, one that includes an officer's approach of an individual suspected at the moment to be breaking the law, with the intention of investigating and, if appropriate, intervening and apprehending the suspect." (*Schreyer*, *supra*, at p. 1069 [dis. opn. of Barbera, J.].) The dissent explained, "I am persuaded that the General Assembly did not intend to restrict its grant of immunity for police officers operating an emergency vehicle only to those circumstances when there is 'movement by a suspect or violator of

7

the law, and reactive movement by officer to apprehend said individual,' as the majority holds." (*Ibid*.) In the dissent's view, a police officer can be in pursuit of a suspect even though the suspect is standing still. (*Id*. at pp. 1070–1073.)

In *Torres*, a police officer hit a pedestrian while following a van that had exceeded the speed limit. The pedestrian sued. Subsequently, the officer obtained summary judgment based on section 59:5-2b(2) of the New Jersey Annotated Statutes. The statute provided immunity to a public employee for injury caused by "an escaping or escaped person[.]" (*Torres*, *supra*, 748 A.2d at p. 126.) The court noted that "the New Jersey Supreme Court expansively applied [the New Jersey Annotated Statutes section 59:2b(2)] to provide absolute immunity for injuries sustained by third persons due to vehicular pursuits, whether the injuries were caused by the pursued . . . or the pursuer[.]" (*Torres*, *supra*, at p. 126.) In reversing, the court noted that there was no evidence that the officer was in "pursuit of a fleeing person[.]" (*Id*. at p. 127.) In other words, there was no evidence that the officer reasonably believed that the driver of the van knew he or she was being pursued and was trying to elude the officer. (*Id*. at pp. 126–128.) *Torres* offers no guidance because the New Jersey immunity applies only when there is an escaping or escaped person. Section 17004 has no such condition. Moreover, *Torres* did not engage in statutory interpretation of the word "pursuit," nor did it consider whether an officer could be in pursuit while opening the door of his or her car.

The plaintiff in *Fogg* sued after colliding with a deputy sheriff's parked vehicle. The issue was whether the deputy was responding to an emergency and therefore entitled to immunity. The court did not interpret the meaning of the word "pursuit." (*Fogg*, *supra*, 892 P.2d at pp. 272–277.) Thus, there is nothing in *Fogg* that supports Moreno's interpretation of section 17004.

8

*Conclusion*

Operation of an emergency vehicle while in pursuit of a violator or suspected violator of the law includes the act of an officer opening his or her car door during a traffic stop as a precursor to getting out and confronting the motorist. This interpretation provides officers with the discretion to fully assess and act on their safety needs during traffic stops. At the same time, victims of officer negligence retain their claims against public entities under section 17001.

### DISPOSITION

The judgment is affirmed.

Quemuel shall recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**.

_____, Acting P. J.
            ASHMANN-GERST

We concur:

_____, J.
      CHAVEZ

_____, J.[*]
      FERNS

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.