**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4286-16T3

LENNOX A. CHUNKOO,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

CITY OF NEWARK POLICE
DEPARTMENT, CITY OF
NEWARK, P.O. R. MACIERA,
and SGT. CELSO VELEZ,

    Defendants-Respondents/
    Cross-Appellants,

and

P.O. KYLE W. FERREIRA,

    Defendant-Respondent,

and

SGT. THOMAS ROE, DET. JOSUE
DURAN, CAPT. YABLONSKY, SGT.
M. MILTON, LT. J. ALBERTO, LT. J.
MINTZ, SGT. HILL, DET. M.
MUHAMMAD, DET. HENDERSON,
HASSAN TODD, STANZIALE

CONSTRUCTION, VICTOR
STANZIALE, MARCIA GRIER
and ROBERT HICKS, JR.,

      Defendants.

_____

      Argued October 3, 2018 – Decided April 4, 2019

      Before Judges Ostrer and Mayer.

      On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3751-12.

      Mitchell J. Makowicz, Jr., argued the cause for appellant/cross-respondent (Blume, Forte, Fried, Zerres & Molinari, attorneys; Mitchell J. Makowicz, Jr., on the briefs).

      Avion M. Benjamin, First Assistant Corporation Counsel, argued the cause for respondents/cross-appellants City of Newark Police Department, City of Newark, and P.O. R. Maciera (Kenyatta K. Stewart, Acting Corporation Counsel, attorney; Avion M. Benjamin, of counsel and on the briefs).

      Diego F. Navas argued the cause for respondent/cross-appellant Sgt. Celso Velez.

PER CURIAM

      This appeal arises out of a 2010 police pursuit that ended when a fleeing stolen vehicle struck a third-party vehicle at a Newark intersection, severely injuring its passenger, plaintiff, Lennox A. Chunkoo. He sued the two officers in the pursuing police vehicle – Kyle Ferreira and R. Maciera – and their

supervising sergeant, Celso Velez – claiming they were reckless and engaged in willful misconduct. Plaintiff also sued the City of Newark under a theory of vicarious liability.[1] Maciera, Velez and the City (defendants)[2] each claimed immunity under the New Jersey Tort Claims Act (the Act), N.J.S.A. 59:1-1 to 12-3. On the first day of trial in April 2016, the court granted defendants' oral motion to dismiss the case.[3]

Plaintiff now appeals. Procedurally, he argues that the court should not have dismissed the case because he was not given sufficient time to respond to the dispositive motion, in violation of Rule 4:46-1. Substantively, he argues that dismissal was improper because defendants were not immune under the Act.

---

[1] Plaintiff voluntarily dismissed his complaint against several other officers, and the owners of the stolen vehicle. He named the City's police department as a defendant, although the City contends the department is not a separate entity subject to suit. Defendant also sued the fleeing driver, who defaulted, and the driver of the vehicle in which he was a passenger. In his complaint, plaintiff alleged the department negligently supervised and trained its officers. However, plaintiff has not briefed that claim and we consider it waived. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015). Instead, plaintiff's sole claim against the City is based on a theory of vicarious liability.

[2] Ferreira did not answer the complaint and default was entered.

[3] The order dismissed the complaint against Ferreira as well.

3

A-4286-16T3

Defendants cross-appeal from two earlier orders that a previous judge entered. The first, in 2014, denied a motion for summary judgment on behalf of all three defendants. The second order, in 2015, denied a summary judgment motion solely on behalf of the City. The court relied in part on its concern that the City's corporation counsel had a conflict of interest in simultaneously representing the officers, although the court never entered an ordering disqualifying counsel.[4] Defendants contend no conflict existed, and the court erred in denying summary judgment. Velez adds that the trial court, in denying his earlier motion for summary judgment, erred in relying on an internal affairs report of the incident, which Velez contends contained inadmissible hearsay.

Having considered the parties' respective arguments in light of the record and applicable law, we reverse the summary judgment dismissal as to the officers, and affirm as to the City.

I.

We discern the following facts from the record, granting plaintiff "all reasonable and favorable inferences." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 240 (2005) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

---

[4] Shortly before trial, Velez obtained separate counsel.

A-4286-16T3

The accident occurred on May 29, 2010. At around 6:45 p.m., Ferreira and Maciera spotted a Ford Explorer speed through a red light, weave between vehicles and go against the traffic flow. The Explorer matched the description of a stolen vehicle that had eluded another officer the previous day. Ferreira and Maciera activated their sirens and warning lights, but the Explorer did not stop. The officers read the license plate to Communications officers and initiated pursuit. Twenty seconds later, Ferreira and Maciera received confirmation that the Explorer was the vehicle from the previous day. Velez joined the Communications officers shortly after the pursuit started.

The pursuit lasted five minutes and thirty-seven seconds, and the vehicles traveled a distance of 4.12 miles. The officers averaged around 44 mph on streets with a 25 mph posted limit, but their speed varied considerably, as they passed through fifteen streets and changed direction fourteen times. During the pursuit, the officers updated Communications about their location. But they said nothing about their speed, until around five minutes into the pursuit, when Communications asked about it for the first time. The officers said they were approaching 50 mph. Ten seconds later, the officers said they were going 70 mph. Soon after, Velez and a Lieutenant in Communications decided to end the

A-4286-16T3

pursuit. The Lieutenant's command to stop went over the radio. Velez asserted he gave a similar order, but his transmission was not received.

The order to stop the pursuit was too late. Within seconds, the fleeing Explorer entered an intersection against the light, and struck, at a right angle, the vehicle in which plaintiff was traveling.

Following an investigation, a sergeant of the Internal Affairs Division (IAD) concluded that the three officers failed to comply with the City's Vehicle Pursuit Policy (the Policy). The IAD sergeant found that the officers had good cause to try stopping the Explorer, because it was driven recklessly. However, once it became clear that the Explorer would not stop, the Policy required that the officers terminate the pursuit. The IAD sergeant concluded the officers failed to properly weigh the need to apprehend the suspect against the risk to public safety.

The Policy established guidelines governing vehicular pursuits, in conformity with the Attorney General's New Jersey Vehicular Pursuit Policy (the AG Policy). The AG Policy authorized a pursuit if an officer reasonably believed the suspect had committed a second- or first-degree offense, or certain other specified offenses, including automobile theft, or if the officer reasonably believed the suspect posed an immediate threat to public safety. Before

engaging in the pursuit, the pursuing and supervising officer must also consider the risk to public danger and the pursuing officer characteristics.

Once the decision to pursue is made, the Policy requires officers to activate their emergency sirens and signals and continually apprise Communications officers of "pertinent information" including their speed.

> If the decision to initiate and/or continue a pursuit is made the officer <u>must</u>:
>
> 1.     Immediately activate the vehicle's emergency lights, audible device and headlights.  The officer <u>must</u> then notify Communications of pertinent information, i.e.,
>
>> a. Reason for the pursuit.
>>
>> b. Direction of travel.
>>
>> c. Identification of the violator's vehicle: year, make, model, color, vehicle registration number, and other identifying characteristics.
>>
>> d. Number of occupants.
>>
>> e. <u>The speed of the pursued vehicle.</u>
>>
>> f. Other information that may be helpful in terminating the pursuit or resolving the incident.
>
> [Policy, § I(B)(1) (Emphasis added).]

The AG Policy includes an essentially verbatim provision.  AG Policy, § II(B)-(C).  The pursuing officer must terminate the pursuit if, among other reasons,

"the officer believes that the danger to the pursuing officers or the public outweighs the necessity for the immediate apprehension of the violator," or "[i]f instructed to do so by a Supervisor." Policy, § I(D).

The AG Policy requires that supervising officers "ensure, for the duration of the pursuit, that this policy and agency procedures are followed by all officers." AG Policy, § V(E). The supervisor must "decide as quickly as possible whether or not the pursuit should continue." Id. at § V. The supervisor must be satisfied that the suspect has committed an enumerated offense or reasonably believes the violator poses an immediate threat to public or officer safety. Id. at § V(A). The pursuit must also be terminated if the supervisor concludes "the danger to the pursuing officers or the public outweighs the necessity for immediate apprehension of the violator." Id. at § V(B). The AG Policy acknowledges the risk of "protracted" pursuits in densely populated areas, stating:

> In recognition of the overall population density and volume of vehicular traffic in this State, and the increased risk attendant to prolonged vehicular pursuits, a supervisor shall order the termination of any pursuit of protracted duration unless the supervisor determines that further pursuit is justified to respond to an immediate threat to public safety.
>
> [Id. at § V(D).]

The City's Policy does not reiterate these supervisory duties. But, it requires dispatchers "[w]hen possible," to "keep the field supervisor apprised of the duration and progress of the pursuit," Policy, § II(B); and the supervisor "shall decide as quickly as possible whether or not to terminate the pursuit if necessary." Policy, § III(A).

Plaintiff obtained reports from two experts. One expert asserted that Maciera should have provided more information about the pursuit's speed and the suspect's reckless driving. The other expert asserted that Velez allowed the pursuit to proceed over an unduly prolonged period of time. Both experts opined that the pursuit was inherently risky because of the volume of vehicular and pedestrian traffic on a holiday weekend. They opined that the pursuit should have been terminated sooner because it was clear the fleeing vehicle was not going to stop.

Maciera explained that he initiated the pursuit because he "he felt [the suspect] was going to end up hurting somebody, and it happened." Maciera said he thought the suspect would stop if the chase continued, because some suspects had stopped for other officers before. But, he admitted he had no prior personal experience in police pursuits.

9

Velez said that he was unfamiliar with Ferreira and Maciera's pursuit experience. He listened to the pursuit with Communications. He said he allowed the pursuit to continue because the "officer[s] appeared to be in control of the pursuit while they were communicating and transmitting their location." However, Velez admitted that he did not know the vehicle's speed until the end of the pursuit, and speed was an important factor to consider when deciding to terminate or not.

## II.

We review de novo the grant of summary judgment, applying the same standard as the trial court. Henry v. New Jersey Dep't of Human Servs., 204 N.J. 320, 330 (2010). We determine whether the moving party has demonstrated the absence of genuine issues of material fact and whether the trial court has correctly determined that the movant is entitled to judgment as a matter of law, owing no deference to the trial court's legal conclusions. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 507 (App. Div. 2015).

## A.

As a procedural matter, the trial court erred in granting defendants' oral motion for dismissal on the first day of trial. The motion was, in essence, a motion for summary judgment. See Seoung Ouk Cho v. Trinitas Reg'l Med.

A-4286-16T3

Ctr., 443 N.J. Super. 461, 471 (App. Div. 2015). As such, it was subject to the summary judgment rules, Rule 4:46-1 in particular. Id. at 471. That Rule requires that summary judgment motions be returnable thirty days before the scheduled trial date. Ibid. The Rule is designed to assure fair notice and an opportunity to be heard. Id. at 472-74.

The court's consideration of the defense motion plainly violated the Rule. A court may make an exception to the thirty-day requirement for "good cause shown," but none was shown here. In particular, defendants presented no reason why they waited until the first day of trial to seek dismissal.

Nor was the procedure permissible because plaintiff may have been familiar with defendants' arguments, which they made supporting motions a previous judge denied in 2014 and 2015. Defendants provided no warning, by an appropriate notice of motion, that they sought the court's reconsideration of those orders. The pre-trial conference transcript reflected the unfair surprise to plaintiff's counsel. We reiterate our disapproval of such summary procedures to dismiss a cause of action without proper notice and compliance with the Court Rules. Id. at 472-74; see also Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 83 (App. Div. 2001).

In addition to the procedural infirmity of the court's order, we conclude for the reasons we set forth below, the trial court substantively erred in dismissing plaintiff's complaint against the officers. Regarding the complaint against the City, we conclude that summary judgment dismissal should have been granted in response to the City's prior, properly noticed motion for summary judgment. Thus, regarding the City, the trial court's procedural error is of no consequence.

B.

The Act grants immunity from liability to police officers for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2(c). Although the immunity is broad, it does not extend to acts of willful misconduct. N.J.S.A. 59:3-14(a) states, "Nothing in this [A]ct shall exonerate a public employee from liability if it is established that his [or her] conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." See Fielder v. Stonack, 141 N.J. 101, 123 (1995) (concluding that N.J.S.A. 59:5-2(b) "provides absolute immunity, absent willful misconduct"); Tice v. Cramer, 133 N.J. 347, 367

(1993) (stating that pursuit immunity under N.J.S.A. 59:5-2(b) is "absolute except in the event of willful misconduct").[5]

There is no genuine dispute that the officers here engaged in a pursuit, implicating 5-2(c) immunity.  Although the Act does not define "pursuit," we held in Torres v. City of Perth Amboy, 329 N.J. Super. 404, 407 (App. Div. 2000) that a pursuit as defined in the AG Policy constitutes a pursuit under 5-2(c).  The AG Policy defines pursuit as

> an active attempt by a law enforcement officer operating a motor vehicle and utilizing emergency warning lights and an audible device to apprehend one or more occupants of another vehicle when the officer reasonably believes that the driver of the fleeing vehicle is aware of the officer's attempt to stop the vehicle and is resisting apprehension by increasing vehicle speed, ignoring the officer or otherwise attempting to elude the officer.

Maciera and Ferreira engaged in such a pursuit.

Thus, the critical issue is whether the officers engaged in willful misconduct.  The concept of willful misconduct "takes its meaning from the context and purpose of its use."  Fielder, 141 N.J. at 124.  Willful misconduct involves "the commission of a forbidden act with actual (not imputed)

---

[5]  Fielder addressed a pursuit before adoption of N.J.S.A. 59:5-2(c).  However, the Supreme Court subsequently considered 5-2(c) a codification of Fielder and Tice.  Alston v. City of Camden, 168 N.J. 170, 178-79 (2001).

A-4286-16T3

knowledge that the act is forbidden." Ibid. In the police pursuit context, the Supreme Court said "willful misconduct in a police vehicular chase has two elements: (1) disobeying either a specific lawful command of a superior or a specific lawful standing order and (2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it." Id. at 126. This definition shields officers from a jury trial when the facts establish mere "gross negligence or even recklessness." Id. at 127. But see Alston v. City of Camden, 168 N.J. 170, 185 (2001) (describing willful misconduct as "intentionally do[ing] some wrongful act" with "reckless indifference to the consequences") (quoting McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)).

When Fielder was decided, the AG Policy had just been implemented. The Court described how willful misconduct could be established under the policy, which constituted a standing order. Id. at 125 n.5. Courts should first consider whether the policy left a choice to an officer's discretion. Ibid. For instance, the AG Policy prohibits two police vehicles from engaging in the same pursuit, unless otherwise directed by supervisors. Ibid. Such a rule leaves no discretion and a knowing violation would constitute willful misconduct.

14

Conversely, the AG Policy tells an officer that it may pursue a suspect if the officer "reasonably believes [the suspect] poses an immediate threat to the public." Ibid. Because the directive gives officers discretion, "a mere error in judgement under such circumstances, although technically a violation of the guideline, would not constitute willful misconduct." Ibid. In sum, where officers are allowed decision-making discretion, the law will grant them substantial leeway and immunity.

Applying these principles, we are satisfied that plaintiff established a genuine issue of fact as to whether the officers engaged in willful misconduct. We recognize that the officers cannot be found to have committed willful misconduct in initiating the pursuit. Both the AG Policy and the City Policy gave the officers discretion to engage in the pursuit if they reasonably believed the suspect committed automobile theft, or the suspect posed an immediate threat to the public's safety.

However, the two policies imposed a non-discretionary duty on the two officers in the vehicle to "provide the speed of the pursued vehicle." The policies state unqualifiedly that the officers "must" do so. As for Velez, the supervising officer, the AG Policy directed him to "ensure, for the duration of

15                                                                    A-4286-16T3

the pursuit, that this policy and agency procedures are followed by all officers."
That obliged Velez to assure the officers reported their speed.

Yet, neither Maciera nor Ferreira gave a report of their speed for the first five minutes or so of the pursuit, and Velez did not ask for one. Without this information, Velez could not make a fully informed decision to terminate the pursuit, or not. The officers admittedly received training in the pursuit policy. A jury could reasonably find that the officers knew the standing order required the pursuing officers to report their speed; the officers knew they were violating that aspect of the order; and they intended to do so. In sum, the jury could find, consistent with Fielder, 141 N.J. at 126, that they committed willful misconduct. There is also sufficient evidence in the record for a jury to conclude that had the officers timely complied with the order to report their speed, the pursuit would have been terminated sooner. On this basis, we reverse summary judgment as to the officers.[6]

---

[6] We recognize that plaintiff's experts also generally criticize the officers' balancing of the risks to the public safety with the benefits to law enforcement, in prolonging the pursuit. However, that balancing is ordinarily the sort of judgment call that the Supreme Court concluded would not constitute willful misconduct, "even though technically a violation of the guideline." Id. at 125 n.5.

While we discern sufficient evidence in the record to create a genuine issue as to the officers' willful misconduct, we reject plaintiff's contention that the officers' immunity may also be overcome by proof that they acted recklessly or without good faith. Plaintiff cites N.J.S.A. 59:3-3, which provides immunity for good faith execution or enforcement of the law. Although good faith immunity under N.J.S.A. 59:3-3 and the more extensive immunity under N.J.S.A. 59:5-2 both apply to police pursuits, the Supreme Court based its holding on the more extensive immunity. Fielder, 141 N.J. at 132-33. Consequently, plaintiff must prove willful misconduct. Id. at 123. Proof of mere recklessness or lack of good faith is not enough, although "[l]ack of good faith may be factually relevant . . . to the state of mind that is part of the definition of willful misconduct." Id. at 126.

C.

The trial court erred in denying the City's motions for summary judgment in 2014 and 2015. As we have discussed, plaintiff seeks to hold the City liable solely on the basis of vicarious liability. A public entity is not liable "for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. 59:2-2. As we have discussed at length, the only basis for establishing an employee's liability in a pursuit case is proof of

A-4286-16T3

willful misconduct.  However, a public entity is also "not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."  N.J.S.A. 59:2-10.  Thus, the only basis for establishing an employee's liability in a pursuit case precludes the City's vicarious liability.  See Fielder, 141 N.J. at 130.  Therefore, the City was entitled to summary judgment as a matter of law.

D.

The corporation counsel's dual representation of officers and the City should not have been a basis for denying the City's summary judgment motions in 2014 and 2015.  The City's motions did not present "a substantial risk that the [corporation counsel's] responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the [other] client[s]," the officers.  RPC 1.8(k).  Counsel could freely argue the legal point that the City would be immune even if the officers engaged in willful misconduct without impairing in any way the officers' contention that they did not.  Nor would disputing plaintiff's claim of willful misconduct by the officers impair the City's contention that it was immune.  See In re Petition for Review of Opinion 552 of Advisory Comm. of Prof'l Ethics, 102 N.J. 194, 205 (1986) (stating that "joint

18

representation will be permissible if it does not appear . . . that the claims against the governmental entity and its individual employees will result in different and inconsistent defenses").

Furthermore, the corporation counsel stated to the court that the City had agreed to indemnify the officers. "[W]here compensatory damages are claimed alone," as they are here, "no conflict will be found to exist if the responsibility for effectuating or providing such relief devolves upon the governmental body." Id. at 200. No further comment on the conflict of interest issue is warranted. R. 2:11-3(e)(1)(E).

E.

Finally, we briefly address Velez's contention on cross-appeal that the trial court, in denying his motion for summary judgment in 2014, improperly relied on the IAD report. He argues the IAD sergeant's conclusions were inadmissible hearsay that did not satisfy a hearsay exception.

The IAD sergeant's conclusions are not essential to our holding that the trial court erred in granting the officers summary judgment. The evidence regarding the reporting of the officers' speed and the role it played in prolonging the pursuit, is found in the radio communications transmitted during the pursuit, and the officers' deposition testimony. In any event, on the eve of trial in 2016,

another trial judge determined that the report should be excluded under N.J.R.E. 403. Plaintiff did not cross-appeal from that determination. Therefore, we need not reach Velez's hearsay-based objections to the IAD sergeant's conclusions about the appropriateness of the officers' actions.

F.

In sum, we affirm summary judgment as to the City, and reverse summary judgment as to Maciera, Velez, and Ferreira, and remand. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION