NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0220-15T2

SALLY PINNELLA,

 Plaintiff-Appellant,

v.

MEDFORD TOWNSHIP PUBLIC SCHOOL
DISTRICT,

 Defendant/Third Party
 Plaintiff-Respondent,

v.

YMCA CAMP OCKANICKON, INC.,

 Third-Party Defendant.

____________________________________

 Argued May 30, 2017 — Decided July 11, 2017

 Before Judges Nugent and Geiger.

 On appeal from Superior Court of New Jersey,
 Law Division, Burlington County, Docket No.
 L-338-13.

 Joel R. Rosenberg argued the cause for
 appellant (Stark & Stark, P.C., attorneys; Mr.
 Rosenberg, of counsel; Mr. Rosenberg and
 Dominic A. Speziali, on the briefs).

 Timothy J. Schipske argued the cause for
 respondent (Salmon, Ricchezza, Singer &
 Turchi, LLP, attorneys; Mr. Schipske, of
 counsel and on the brief).

PER CURIAM

 Plaintiff Sally Pinnella appeals from the summary judgment

order that dismissed the personal injury action she filed under

the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3.

She contends the trial court erred when it granted summary judgment

to defendant Medford Township Public School District (the

District), because she established a prima facie case that a

dangerous condition of the District's property — a wet cafeteria

floor — caused her slip and fall accident and resulting injuries.

 To establish a prima facie case of a tort claim alleging a

dangerous condition of public property, a plaintiff must prove,

among other elements, that the action the public entity took to

protect against the condition was palpably unreasonable. N.J.S.A.

59:4-2. Here, the District positioned warning signs to warn people

entering the cafeteria of the wet floor. Such action was not

palpably unreasonable. For this reason, we affirm the summary

judgment order.

 Plaintiff commenced this action by filing a complaint in

February 2013. The District answered and filed a third-party

complaint against the YMCA seeking indemnification, but the

District dismissed the third-party complaint shortly thereafter.

 2 A-0220-15T2
Plaintiff and the District undertook discovery. On May 1, 2015,

the District moved for summary judgment. The motion record

discloses the following facts.

 Plaintiff worked as a camp counselor for a YMCA Camp. The

YMCA entered into an agreement with the Medford Township Board of

Education (the Board) to operate before and after school programs

at certain locations in certain schools, including the cafeteria

of Taunton Forge Elementary School (Taunton). The agreement

between the YMCA and the Board required the Board to provide space

for the YMCA to host its programs. The rental fee for the space

was one dollar for the two-year term of the agreement beginning

on July 27, 2011. The agreement required the Board to maintain

the rental space in good condition and provide janitorial services.

 Plaintiff slipped and fell on Taunton's cafeteria floor on

May 1, 2012. Taunton's Head Custodian (the custodian), who mopped

the floor each day, testified at her deposition that the last

group of students left the cafeteria each afternoon at

approximately 1:20 p.m. The custodian would then begin to sweep

the cafeteria floor before she began mopping. Before beginning

to mop, she would place two cones at the cafeteria's entrance

doorways. One cone, a "fold-up type," came to her knee. The

other cone came to her waist. Both had warnings in English and

 3 A-0220-15T2
Spanish stating, "Caution: Wet Floor." She usually finished

mopping at approximately 1:45 p.m. or 1:50 p.m.

 On the afternoon of May 1, 2012, between 1:50 p.m. and 2:20

p.m., plaintiff arrived at the Taunton cafeteria to set up for her

program activities. The custodian testified that plaintiff

arrived while she, the custodian, was still mopping the floor.

When plaintiff entered the cafeteria, the custodian told her "she

was early and the floor is still wet." Plaintiff replied, "[i]t's

okay."1 The custodian observed plaintiff walk by a wet floor

warning cone, step onto the wet floor, and begin preparing for her

afternoon program.

 Plaintiff admitted she saw warning cones, but alleged they

"were always up every day whether the floors were wet or not." In

addition, plaintiff testified the floors were mopped every day,

and "some days they were very wet. Some days they were a little

wet. Some days they were [not]." Plaintiff asserted "there were

still puddles and slippery spots" on the floor "many times" when

the children arrived for their after-school programs. She also

1
 In her deposition, the custodian testified she recalled that
conversation with plaintiff. In plaintiff's response to
defendant's statement of material facts, plaintiff admitted the
custodian recalled that conversation. However, when deposed,
plaintiff denied anyone ever warned her, upon her arrival at the
Taunton cafeteria, that the floor was wet.

 4 A-0220-15T2
asserted, "everybody in the school knew" the floors were wet when

the after-school programs started.

 A few minutes before she fell, plaintiff asked another camp

counselor to see if the outdoor playground was too wet for the

children, as it had been raining. As the other counselor left to

check the playground, plaintiff told her "to be careful on the

floor because . . . they had just mopped." When the counselor

returned, plaintiff had fallen.

 Plaintiff recalled she had been in the cafeteria

approximately twenty minutes when she slipped in a puddle while

walking to get snacks. She sustained serious injuries, including

factures to both wrists.

 Following plaintiff's fall, the school nurse came to her aid.

Although the floor did not appear wet to the nurse, she

nevertheless paid close attention to the floor because the

custodian "installed the fear of God into [everyone] walking on

her floors because she did [not] want any[one] to get hurt. This

was not just the after-school people. It was anybody that would

have to go in the cafeteria."

 Emergency medical personnel arrived at approximately 3:25

p.m., treated plaintiff, and transported her to a local hospital.

A Medford Township police officer also arrived at Taunton. The

 5 A-0220-15T2
officer noted "some of the [cafeteria] floor was still wet with

water in some areas."

 The District's Director of Operations and Technology, whose

duties included facilities maintenance and custodial services,

testified the cafeteria could not be cleaned at night. Rather,

the cafeteria was required to be cleaned immediately following

lunches to remove any food products on the floor.

 The motion record was devoid of any evidence of a previous

slip and fall accident on the cafeteria floor. Plaintiff could

not recall any complaints made to the District. The YMCA's Child

Care and Day Care Director testified that at no time before May

1, 2012, the date of plaintiff's accident, was she ever informed

of any concerns about the condition of the cafeteria when camp

counselors arrived for the "School's Out" program. Further, an

outside company's employee, who had been in charge of the cash

register systems for school lunches for approximately six years,

testified she never heard of anyone other than plaintiff falling

in the cafeteria on an allegedly wet floor.

 In support of its summary judgment motion, defendant

submitted a civil engineer's expert report in which the engineer

concluded the cafeteria floor was "safe, slip-resistant and

suitable for use by the YMCA for child care programs." The expert

asserted plaintiff "knowingly chose to walk on the cafeteria floor"

 6 A-0220-15T2
and "disregarded wet floor signage warning her the flooring was

wet." The expert opined plaintiff's leather-soled loafers

generally "provide reduced traction characteristics in the

presence of flooring contaminants." Ultimately, the expert

concluded "[t]he most reasonable scientific explanation for this

incident . . . relates directly and solely to [plaintiff's] own

unsafe actions and conduct."

 Plaintiff countered with her own expert, a Director of

Transportation and School Safety for an Indiana public school

district. Plaintiff's expert opined the District violated the

Occupational Safety Health Act of 1970 (OSHA) by failing to meet

its statutory requirements to keep its workplace free from dangers.

The expert further opined the "system" the District "had in place

to clean the cafeteria floor was not in keeping with OSHA

regulations or the New Jersey Public Employee Safety and Health

Plan, as it did not provide a clean, dry surface for YMCA

employees." Lastly, the expert opined the District's response to

plaintiff's injury was flawed, "as first responders were not

contacted in a timely manner."

 On appeal, plaintiff argues defendant "readily admitted that

its cafeteria floor was in a 'dangerous condition' on May 1, 2012."

Plaintiff further argues it was reasonably foreseeable that she

would be in the cafeteria fifteen minutes before class was

 7 A-0220-15T2
dismissed; and, the court erred by granting summary judgment in

the face of genuinely disputed material facts demonstrating the

District created the dangerous condition. Lastly, plaintiff

contends there are genuinely disputed issues of material fact as

to whether the measures the District took to guard against the

dangerous condition were palpably unreasonable.

 The trial court granted defendant's summary judgment motion.

The court could not find that "putting signs up and mopping a

cafeteria floor . . . creates a dangerous condition." Further,

even if such activity created a dangerous condition, "people would

be on notice and aware of the fact that there was water on this

floor. And certainly that is not conduct that can be criticized

and that can be called palpably unreasonable." The trial court

concluded this was "a situation where . . . plaintiff is not able

to meet her burden of proof with regard to a dangerous condition,

due care, and palpably unreasonable conduct[.]"

 Plaintiff moved for reconsideration. The trial court denied

the motion. Plaintiff filed this appeal.

 We review the trial court's grant of summary judgment under

well-known standards. "[W]e apply the same standard governing the

trial court – we view the evidence in the light most favorable to

the non-moving party." Nicholas v. Mynster, 213 N.J. 463, 478

(2013) (citation omitted). If "the record reveals that 'there is

 8 A-0220-15T2
no genuine issue as to any material fact challenged and that the

moving party is entitled to a judgment or order as a matter of

law,' then a court should grant summary judgment." Ibid. (quoting

R. 4:46-2(c)).

 "[A] non-moving party cannot defeat a motion for summary

judgment merely by pointing to any fact in dispute." Brill v.

Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995). Rather,

"once the moving party presents sufficient evidence in support of

the motion, the opposing party must 'demonstrate by competent

evidential material that a genuine issue of fact exists.'" Globe

Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (quoting Robbins

v. Jersey City, 23 N.J. 229, 241 (1957)). Thus, a reviewing court

must decide "whether the competent evidential materials presented,

when viewed in the light most favorable to the non-moving party,

are sufficient to permit a rational factfinder to resolve the

alleged disputed issue in favor of the non-moving party." Davis

v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation

omitted).

 When reviewing an order dismissing a tort claim against a

public entity, we bear in mind that public entities are liable

"only . . . within the limitations of [the TCA] and in accordance

with the fair and uniform principles established [t]herein."

N.J.S.A. 59:1-2. The TCA was "designed to reestablish the immunity

 9 A-0220-15T2
of public entities while relieving some of the harsh results of

the doctrine of sovereign immunity." Alston v. City of Camden,

168 N.J. 170, 176 (2001) (citation omitted). Consequently, "the

approach of the [TCA] is to broadly limit public entity liability."

Ibid. (quoting Harry A. Margolis & Robert Novack, Claims Against

Public Entities, comment to N.J.S.A. 59:1-2 (2001)). "As the

Comment to N.J.S.A. 59:2-1 . . . states, courts should employ an

analysis that first asks 'whether an immunity applies and if not,

should liability attach.'" Bligen v. Jersey City Hous. Auth., 131

N.J. 124, 128 (1993). Courts should also exercise restraint in

accepting novel causes of action against public entities. Attorney

General's Task Force on Sovereign Immunity -- 1972, Comment to

N.J.S.A. 59:2-1; Ayers v. Twp. of Jackson, 106 N.J. 557, 574

(1987).

 A public entity's liability for an injury occurring on its

property is circumscribed by N.J.S.A. 59:4-2:

 A public entity is liable for injury caused
 by a condition of its property if the
 plaintiff establishes that the property was
 in dangerous condition at the time of the
 injury, that the injury was proximately caused
 by the dangerous condition, that the dangerous
 condition created a reasonably foreseeable
 risk of the kind of injury which was incurred,
 and that either:

 a. a negligent or wrongful act or
 omission of an employee of the
 public entity within the scope of

 10 A-0220-15T2
 his employment created the
 dangerous condition; or

 b. a public entity had actual or
 constructive notice of the
 dangerous condition under section
 59:4-3 a sufficient time prior to
 the injury to have taken measures to
 protect against the dangerous
 condition.

 Nothing in this section shall be construed to
 impose liability upon a public entity for a
 dangerous condition of its public property if
 the action the entity took to protect against
 the condition or the failure to take such
 action was not palpably unreasonable.

 [N.J.S.A. 59:4-2.]

 Thus, a plaintiff must prove the following elements: "(1) the

[property] was in dangerous condition; (2) the dangerous condition

created a foreseeable risk of, and actually caused, injury to

plaintiff; (3) [the public entity] knew of the dangerous condition;

and (4) the action taken by [the public entity] to protect against

the dangerous condition was palpably unreasonable." Muhammad v.

N.J. Transit, 176 N.J. 185, 194 (2003).

 Palpably unreasonable behavior is behavior "patently

unacceptable under any given circumstance . . . ." Ogborne v.

Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (quoting Kolitch

v. Lindedahl, 100 N.J. 485, 493 (1985)). For behavior to be

"palpably unreasonable," "it must be manifest and obvious that no

 11 A-0220-15T2
prudent person would approve of [the] course of action or

inaction." Ibid. (citation omitted). As we have explained:

 the legislative intention was to allow
 sufficient latitude for resourceful and
 imaginative management of public resources
 while affording relief to those injured
 because of capricious, arbitrary, whimsical or
 outrageous decisions of public servants. We
 have no doubt that the duty of ordinary care,
 the breach of which is termed negligence,
 differs in degree from the duty to refrain
 from palpably unreasonable conduct. The
 latter standard implies a more obvious and
 manifest breach of duty and imposes a more
 onerous burden on the plaintiff.

 [Williams v. Phillipsburg, 171 N.J. Super.
 278, 286 (App. Div. 1979).]

 Although the issue of whether a public entity's conduct was

palpably unreasonable usually presents a fact question for a jury,

Vincentore v. Sports & Expo. Auth., 169 N.J. 119, 130 (2001), the

issue may be ripe for disposition on a summary judgment motion.

Polzo v. Cty. of Essex, 209 N.J. 51, 75 n.12 (2012); see also

Muhammad, supra, 176 N.J. at 199-200. The case now before us is

ripe for disposition on summary judgment. Even assuming

plaintiff's evidence and expert report established the partially

wet cafeteria floor constituted a dangerous condition, the trial

court correctly determined the District's conduct in placing cones

or signs to warn of the wet floor was not palpably unreasonable.

 12 A-0220-15T2
 Plaintiff argues the issue of palpable unreasonableness was

a jury question for several reasons. First, the warning cones

were placed regardless of whether the floor was being mopped or

whether it was wet, thus rendering the presence of the warning

cones useless and negating any "notice" or "awareness" the warnings

otherwise would have conveyed to individuals walking on the

cafeteria floor.

 Second, setting up an afternoon program in the cafeteria soon

after the floor had been mopped, and failing to dry the floor, mop

it at night, or use a different cleaning method was palpably

unreasonable. In support of her second assertion, plaintiff cites

the testimony of Kyle Francis, a camp counselor, who opined the

school should have mopped the floor at a different time. Plaintiff

also cites the testimony of the school's custodian, who testified

in response to a leading question that there was nothing preventing

a custodian from mopping the cafeteria floor at night.

 Lastly, plaintiff asserts a jury could have determined it was

palpably unreasonable for the District not to require its

custodians to use a dry mop or fans to expedite the drying process

after the floor was mopped.

 We reject plaintiff's arguments for several reasons. First,

the camp counselor's opinion about when the floor should have been

mopped, and the custodian's response to a leading question implying

 13 A-0220-15T2
there was nothing to prevent custodians from mopping the floor at

night, are irrelevant. Many outsiders who come into contact with

various organizations, if asked, might volunteer opinions about

why the organization's operations should be other than what they

are. Such outsider opinions are relatively meaningless in

determining whether an organization has been negligent, and

particularly whether a public entity's conduct is palpably

unreasonable. As to the latter issue, the decisions of public

employees charged with operational supervision and discretionary

decision-making are the relevant persons whose opinions must be

evaluated in the context of the TCA. Here, the Director of

Operations testified the cafeteria had to be cleaned immediately

following lunch to remove any food products on the floor. Had

that not be done, and had a child been injured after slipping on

food, the District would likely be criticized or sued for not

cleaning the floors after lunch.

 Insofar as the custodian is concerned, the response to the

leading question, "is there anything that prevents a custodian

from mopping the cafeteria floor at night," is meaningless due to

its vague nature. The absence of "anything preventing" such

activity does not mean there were no countervailing reasons to mop

the floor when it was mopped. Besides, the custodian was not the

Director of Operations.

 14 A-0220-15T2
 Plaintiff's remaining arguments are unsupported by the record

or constitute little more than hindsight criticism. For example,

the argument the signs were rendered useless because they were

placed regardless of whether the floor was wet is contrary to the

evidence. The record establishes the custodian placed the signs

before she began to mop. Depending upon numerous factors, the

time it took for the floor to dry varied. There is no competent

evidence the signs were placed at times when the floor was not

mopped. To the extent plaintiff's claim is one that the floor

typically dried before the signs were removed does not render the

placement of the sigs palpably unreasonable.

 Plaintiff's argument that the District should have used fans

or dry mops – apparently to assure the floors were perfectly dry

– are bald assertions without any consideration of how long such

procedures would have taken, how many employees it would have

taken to implement them, and whether they could have been completed

in time for the after school program.

 The question the trial court was required to answer was not

whether the District could have taken every conceivable measure

or, in hindsight, taken extraordinary steps to guard against the

wet floor. Rather, the question was whether the action the

District did take – placing warning cones where they were plainly

visible to all who entered the cafeteria – was palpably

 15 A-0220-15T2
unreasonable. In other words, was it manifest and obvious that

no prudent person would approve of such course of action; was the

action taken capricious, arbitrary, whimsical or outrageous? We

conclude that the issue — whether placing cones that warned of a

recently mopped floor, still in the process of drying, was palpably

unreasonable — was properly decided by the trial court on summary

judgment. We agree with the trial court that the action the

District took did not create a jury question as to palpable

unreasonableness. Accordingly, we affirm the trial court's order

granting summary judgment to the District and dismissing the

complaint with prejudice.

 Affirmed.

 16 A-0220-15T2